# Case No. 23-3048

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
### Cincinnati, Ohio

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | U.S. District Court for the |
| vs. | ) | Northern District of Ohio, |
| | ) | Case No. 1:22-cr-00164-1 |
| | ) | |
| **LANCE TOBIAS,** | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

---

On Appeal from the United States District Court
for the Northern District of Ohio

---

## BRIEF OF APPELLANT LANCE TOBIAS

---

Timothy F. Sweeney (OH 0040027)
LAW OFFICE OF TIMOTHY F. SWEENEY
The 820 Building, Suite 430
820 West Superior Ave.
Cleveland, Ohio   44113-1800
(216) 241-5003
tim@timsweeneylaw.com

Counsel for Appellant Lance Tobias

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT .........................................1

JURISDICTIONAL STATEMENT ........................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................3

STATEMENT OF THE CASE.............................................................3

   A. Background facts of charged offenses...............................................3

   B. Indictment and initial proceedings.................................................6

   C. Plea Agreement.....................................................................8

   D. Change of Plea Proceedings ......................................................11

   E. Safety-Valve Proffer. ...........................................................12

   F. Presentence Report. ..............................................................14

   G. Sentencing Hearing, Day 1.......................................................16

   H. Day 2 of the Sentencing Hearing; Sentence, and Final Judgment. .................22

SUMMARY OF ARGUMENT .............................................................25

ARGUMENT ...............................................................................26

   I. The district court clearly erred, and subjected Tobias to an insurmountable
   burden in violation of law and due process, when the safety-valve relief of 18
   U.S.C. §3553(f) and USSG §§5C1.2 and 2D1.1(b)(18) was denied on the basis
   of the district judge's speculation and biased personal opinions about additional
   information which the judge believed Tobias' proffer to the government
   should have been able to include, in circumstances where the government
   was fully satisfied with Tobias' proffer and supported his safety-valve
   relief..................................................................................26

A. Standard of review. ........................................................................26

B. Tobias satisfied all requirements to obtain safety-valve relief from the mandatory minimum of 10 years. ..............................................28

C. The district court's "factfinding" on the safety valve was predominated with speculation, guesswork, advocacy, and bias, and is the epitome of "clear error." ...................................................................35

D. The case law fully supports a finding of clear error here. ..........................46

II. The district court committed significant procedural errors—which require resentencing—when it failed to calculate Tobias' Guidelines sentencing range and imposed a $100,000 fine which was determined without regard to a properly-determined Guidelines range and in derogation of the Guidelines instructions............................................................................................49

CONCLUSION ......................................................................................54

CERTIFICATE OF COMPLIANCE......................................................55

CERTIFICATE OF SERVICE ..............................................................55

APPELLANT LANCE TOBIAS'
DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............56

# TABLE OF AUTHORITIES

**Cases**

Anderson v. City of Bessemer, 470 U.S. 564 (1985) ...............................41

Gall v. United States, 552 U.S. 38 (2007) ...............................................49

In re Jones, 2022 U.S. App. LEXIS 24277 (6th Cir. Aug. 26, 2022)......................51

Rosales-Mireles v. United States, 138 S. Ct. 1897 (2018) ............................... 49, 53

United States v. Adu, 82 F.3d 119 (6th Cir. 1996)......................... 27, 30, 31, 34, 47

United States v. Alvarado-Rivera, 412 F.3d 942 (8th Cir. 2005).................... 40, 47

United States v. Barron, 940 F.3d 903
    (6th Cir. 2019) ...................................................27, 29-31, 37, 42, 44, 46

United States v. Carpenter, 142 F.3d 333 (6th Cir. 1998)......................................32

United States v. Collins, 924 F.3d 436 (7th Cir. 2019) .............................. 41, 42, 47

United States v. Cota-Luna, 891 F.3d 639
    (6th Cir. 2018) ............................................... 11, 26, 28, 31, 34, 37, 48

United States v. Davis, 858 F. App'x 821 (6th Cir. 2021) ......................................52

United States v. Diaz-Cardenas, 351 F.3d 404 (9th Cir. 2003)...............................47

United States v. Estrada-Gonzalez, 32 F.4th 607 (6th Cir. 2022) ..........................40

United States v. Fowler, 819 F.3d 298 (6th Cir. 2016) ...........................................49

United States v. Gates, 48 F.4th 463 (6th Cir. 2022),
    cert denied, 143 S. Ct. 640 (2023)........................................... 50, 51, 52

United States v. Haynes, 55 F.4th 1075 (6th Cir. 2022)..........................................26

United States v. Johnson, 379 F. Supp. 3d 1213 (M.D. Ala. 2019). ......................45

United States v. Lima-Rivero, 971 F.3d 518 (5th Cir. 2020).................................46

United States v. Martin, 2022 U.S. App. LEXIS 29856
    (6th Cir. Oct. 24, 2022)................................................................. 27, 47

United States v. Medina, 665 F. App'x 273 (4th Cir. 2016) ...................................46

United States v. Miller, 179 F.3d 961 (5th Cir. 1999)............................................47

United States v. Miller, 734 F.3d 530 (6th Cir. 2013)............................................26

United States v. Miranda-Santiago, 96 F.3d 517 (1st Cir. 1996) ...........................46

United States v. Moses, 289 F.3d 847 (6th Cir. 2002) ...........................................36

United States v. O'Dell, 247 F.3d 655 (6th Cir. 2001)...................................... 30-31

United States v. Quirante, 486 F.3d 1273 (11th Cir. 2007)....................................30

United States v. Raddatz, 447 U.S. 667 (1980) .....................................................40

United States v. Reinberg, 62 F.4th 266 (6th Cir. 2023)............... 26, 30, 31, 41, 47

United States v. Salgado, 250 F.3d 438 (6th Cir. 2001).........................................47

United States v. Sharp, 2023 U.S. App. LEXIS 1408
    (6th Cir. Jan. 18, 2023) ............................................................. 30, 31, 47

United States v. Testa-Vega, 2018 U.S. App. LEXIS 19228
    (6th Cir. July 12, 2018)...........................................................................47

United States v. Young, 847 F.3d 328 (6th Cir. 2017)...........................................27

**Statutes**

18 U.S.C. §3232 ......................................................................................................2

18 U.S.C. §3553(a) ................................................................................. 24, 49, 51

18 U.S.C. §3553(f)............................................................................... passim

21 U.S.C. §802(32) ........................................................................................ 16, 51

21 U.S.C. §841(a)(1)................................................................6, 7

21 U.S.C. §841(b)(1)(B)...........................................................6, 7

21 U.S.C. §846...........................................................................6

28 U.S.C. §1291..........................................................................2

Rule 11(c)(1)(B)...........................................................................8

USSG 2D1.1(b)(18) ......................................................... 9, 26, 28

USSG 2D1.1(c)(5) ........................................................... 9, 15, 16

USSG 2D1.1(c)(6) ........................................................... 9, 16, 51

USSG 2D1.1, comment 6............................................... 16, 51

USSG 5C1.2 ..................................................... 3, 8, 26, 31

USSG 5E1.2(d) ................................................................ 52, 53

USSG 5E1.2(c)(3) ...............................................................52

USSG 5E1.2(c)(4) ...............................................................52

USSG 5G1.1(b) ...................................................................49

## Other Authorities

*2021 Annual Report and Sourcebook of Federal Sentencing Statistics*,
   Table 17 (U.S. Sentencing Commission 2021). ....................................53

*2022 Annual Report and Sourcebook of Federal Sentencing Statistics*,
   Table 17 (U.S. Sentencing Commission 2022) ....................................53

Natasha Bronn, "Unlucky Enough to Be Innocent": Burden-Shifting and the
   Fate of the Modern Drug Mule Under the 18 U.S.C. §3553(f) Statutory
   Safety Valve, 46 COLUM. J.L. & SOC. PROBS. 469 (2013) ...................................45

United States Sentencing Commission, *2011 Report to the Congress:*
    *Mandatory Minimum Penalties in the Federal Criminal Justice*
    *System* (2011) .......................................................................................................45

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Lance Tobias requests oral argument. This case involves a plea agreement to drug offenses and the application of the safety valve—i.e., the statutory and Guidelines provision which allows sentencing below an otherwise applicable mandatory minimum—as applied to a 56-year-old, lower-level drug offender. The district court denied the safety valve and imposed the mandatory minimum; Tobias believes the court clearly erred in doing so, including because the government was fully satisfied with Tobias' safety-valve proffer. The case presents important and recurrent issues. Counsel believes that oral argument will assist the Court in considering these issues and determining the outcome of this case. For these reasons, Tobias asks this Court to hear oral argument in this appeal.

## **JURISDICTIONAL STATEMENT**

This Court had subject matter jurisdiction of Lance Tobias' direct appeal from his federal criminal conviction. Jurisdiction of this Court is conferred pursuant to 28 U.S.C. §1291. Jurisdiction of the district court was based upon 18 U.S.C. §3231. A notice of appeal was filed with the clerk of the district court for the Northern District of Ohio on January 18, 2023 (R. 38, Notice (PageID#244)), from the judgment and commitment order signed by Judge John R. Adams, Akron, Ohio on January 18, 2023. (R. 35, Judgment (PageID#226-32).)

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

I. Did the district court clearly err, and subject Tobias to an insurmountable burden in violation of law and due process, when the court denied Tobias the safety-valve relief of 18 U.S.C. §3553(f) and USSG §5C1.2 based upon the court's speculation and biased personal opinions about additional information which it believed Tobias' proffer to the government should have been able to include, in circumstances where the government was fully satisfied with Tobias' proffer and supported his safety-valve relief?

II. Did the district court commit significant procedural errors—which require resentencing—when it failed to calculate Tobias' Guidelines sentencing range and imposed a $100,000 fine which was determined without regard to a properly-determined Guidelines range and in derogation of the Guidelines instructions?

## <u>STATEMENT OF THE CASE</u>

### A. Background facts of charged offenses.

The principal issue in this case is whether Lance Tobias—with a criminal history score of ZERO—was entitled to safety-valve relief, against a mandatory minimum of 10 years, for his instant 2022 drug offense for which he promptly pleaded guilty, accepted responsibility, and made an in-person safety-valve proffer to the government which the in-attendance Assistant U.S. Attorney and postal inspectors all considered to be extremely forthright and sufficient. The proffer, indeed, was described at sentencing, without any dispute, as "the most fruitful information-packed Safety Valve interview that [the agent has] ever had." (R. 42, Transcript Sent. Hearing, Day 2 ("TSH2") at 7 (PageID#255) (Sealed).)

The mandatory minimum's presence in this case was the result of an old conviction from 1994, when Tobias, born in 1966, was in his late 20's, and for which

- 3 -

he had been released from custody *20 years* before this current plea. The safety valve is meant for lower-level drug-conspiracy participants *exactly* like Tobias. But it was arbitrarily and wrongfully denied by District Judge John R. Adams who did not attend the proffer and relied only on a written summary report about it, plus the court's guesswork and biased speculation about what someone with Tobias' relatively low-level involvement in the subject drug "conspiracy" should know and be able to disclose. The court thus imposed the mandatory minimum of 10 years, more than double the 46-57 months which—had the court *calculated* the Guidelines sentencing range (it failed to do so)—was the Guidelines sentence and the sentence requested by the parties' Plea Agreement.

This case arose when postal inspectors in Cleveland, Ohio encountered a USPS Priority Mail Express package in March 2020, which they believed was suspicious for drug trafficking, including because its return address was for a person ("J. McKinley") who was evidently known to have several drug trafficking convictions in Cuyahoga County, Ohio. (R. 30, Final PSR at ¶¶ 10-11 (PageID#181) (SEALED).) On March 31, 2020, the inspectors obtained a federal search warrant for that parcel. The parcel was addressed to "LANCE T.," at an address on "Crestwold Avenue, Los Angeles, California." (Id. at ¶ 10 (PageID#181).) When the inspectors opened it, they found that the parcel contained $9,250 in U.S. currency. (Id.)

- 4 -

According to the PSR, the postal inspectors evidently had prior information which caused them to believe that appellant, Lance Tobias, was associated with that California address, and they were allegedly familiar with Tobias' name and that address. (Id. at ¶ 11 (PageID#181).) This is because, "from 2013 through 2020"— much of which was barred by the 5-year statute of limitation, *if* any offense was committed—the Cleveland inspectors had intercepted "several USPS parcels mailed from the Cleveland, Ohio area to [that California address] that contained U.S. currency." (Id.) "Several of the parcels were addressed to TOBIAS, or businesses associated with Tobias." (Id.)

Based on that prior information, the postal inspectors believed that "the $9,250 seized on March 31, 2020, was mailed by McKinley for the purchase [from Tobias] of controlled substances, particularly pills pressed with Fentanyl." (Id. at ¶ 12 (PageID#181).)

Two months later, on May 27, 2020, while conducting parcel interdiction, the Cleveland postal inspectors identified another USPS Priority Mail parcel, addressed to a "J. Ransby," in Beachwood, Ohio, with a return address of "David Hunter" in Culver City, California. (Id. at ¶ 13 (PageID#182).) The inspectors identified the parcel as "a suspect drug parcel based on several characteristics, including but not limited to type of mail, origin, destination, and size." (Id.) That parcel had been mailed on May 26, 2020 from California, and it had what were believed to be

"fictitious sender and addressee names." (<u>Id.</u> at ¶ 15 (PageID#182).)

The inspectors obtained a search warrant for that second parcel on May 28, 2020, which resulted in "the seizure of approximately eleven ounces of light blue round pills marked as 'M' on one side and '30' on the other side." (<u>Id.</u> at ¶ 16 (PageID#182).) "The pills were pressed with markings consistent with Oxycodone Hydrochloride 30 milligram, but they were suspected to contain Fentanyl based on similar seizures by Inspectors in the [Cleveland] Field Office." (<u>Id.</u>)

On June 8, 2020, an examination report found that "the pills had a net weight of approximately 295.75 grams and were found to contain Fentanyl and 4-ANPP. [Tobias'] fingerprints were found on pieces of paper used as lids for the pills." (<u>Id.</u> at ¶ 17 (PageID#182).)

**B. Indictment and initial proceedings.**

Based on these alleged acts, Tobias was named as the sole defendant in a three-count indictment for drug offenses filed on April 13, 2022, in the Northern District of Ohio. (R. 1, Indictment (PageID#1).)

This included in Count 1 a "conspiracy" to distribute and possess with intent to distribute "more than 40 grams of a mixture and substance containing a detectable amount of fentanyl," in alleged violation of 21 U.S.C. §§841(a)(1), (b)(1)(B), and 846. (<u>Id.</u>) Count 2 charged that Tobias, on or about May 27, 2020, in the Northern District of Ohio [<u>i.e.</u>, as to the "Ransby" package], did knowingly and intentionally

distribute "more than 40 grams of a mixture and substance containing a detectable amount of fentanyl," in alleged violation of 21 U.S.C. §841(a)(1) and (b)(1)(B). Count 3 alleged that Tobias, on or about May 27, 2020, used the U.S. mails to facilitate a felony drug offense. (Id.)

On April 28, 2022, Tobias—who grew up in Cleveland, Ohio, but has lived in the Los Angeles area for most of his life—was arrested in California on these federal charges. (Docket Entry, 4/28/2022.)

Tobias was arraigned in the Northern District of Ohio, in Akron, on May 5, 2022, during which he entered a plea of not guilty. (Minute Entry of 5/05/2022.) Because he was found indigent, Tobias was represented by a CJA attorney. He was ordered detained pending trial. (R. 13, Order of Detention (PageID#47-79).)

The court set a trial date for July 11, 2022. (R. 12, Trial Order at 1 (PageID#39).) The court's deadline for accepting any plea agreement was the final pretrial, which in this case was reset to July 7, 2022. Tobias timely informed the court of his intent to change his plea pursuant to a plea agreement. (R. 17, Notice to Plea (PageID#56-57).)

On July 7, 2022, the government gave notice of Tobias' prior conviction from 1994, as a qualifying "serious violent felony" for purposes of the increased punishment provision of 21 U.S.C. 841(b)(1)(B). That 1994 conviction was for a July 1993 armed bank robbery and was entered against the then 27-year-old Tobias

on June 16, 1994, by the Central District of California. (R. 18, USA Notice (PageID#58-89); R. 30, Final PSR at ¶ 35 (PageID#184).) As a result of that conviction, the government claimed that Tobias was subject to increased punishment under 21 U.S.C. 841(b)(1)(B)(vi), to wit, the mandatory minimum of 10 years if Tobias was convicted of the charged offense. (R. 18, USA Notice at 2 (PageID#59).)

**C. Plea Agreement.**

On July 7, 2022, Tobias and the government entered into a written plea agreement under Rule 11(c)(1)(B). Tobias was to plead guilty to Counts 1 and 2 of the indictment, and he would stipulate that the amount of fentanyl involved was 295.75 grams. (R. 19, Plea Agreement at ¶¶ 11, 19 (PageID#63-65).) Count 3 would be dismissed.

Tobias acknowledged that he has the prior conviction for the "serious violent felony" noted above and agreed to waive any challenges to that prior conviction. (Id. at ¶ 4 (PageID#62).)

The Plea Agreement noted the court's authority under the safety valve—as set forth in 18 U.S.C. §3553(f) and USSG §5C1.2—to impose a sentence below the minimum sentence otherwise required by statute or Guidelines. The Agreement also included a stipulation by the parties that the applicable offense level under the Sentencing Guidelines would be **28**, before accounting for the safety valve and any acceptance of responsibility (if those requirements were met), as follows:

- 8 -

| Counts 1 and 2: Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl; Distribution of Fentanyl | |
|---|---|
| Base offense level for 280-400 grams fentanyl (USSG 2D1.1(c)(6)) | <u>28</u> |
| **Total Offense Level before Acceptance of Responsibility** | **28** |

(R. 19, Plea Agreement at ¶ 19 (PageID#65).)

As for the safety valve, the parties agreed that, in the event the court determined Tobias met the requirements for the safety valve, Tobias would be entitled to an additional 2-level reduction on the agreed Guidelines calculation of 28, as required by USSG §2D1.1(b)(18). (<u>Id</u>.) This was the parties' mutual recognition that, where the safety valve applies, the guilty-pleading Tobias would get *two* sentencing benefits: **(1)** he would avoid the 10-year mandatory minimum arising from his 1994 conviction (R. 30, Final PSR at ¶ 35 (PageID#184)); and **(2)** the applicable guideline range on which the trial court was required to sentence him without regard to the mandatory minimum would be two levels lower. <u>See</u> USSG §2D1.1(b)(18).

As for acceptance of responsibility, the government agreed to recommend a three-level reduction "provided [Tobias'] conduct continues to reflect [his] acceptance of responsibility." (R. 19, Plea Agreement at ¶ 20 (PageID#65).)

As such, the Plea Agreement contemplated that, if Tobias met the requirements for the safety valve and for acceptance of responsibility, Tobias' Guideline level for sentencing would be *level 23*, as follows:

| Total Offense Level before Acceptance of Responsibility | 28 |
|---|---|
| Less: Safety-Valve reduction | -2 |
| Less: Acceptance of Responsibility | <u>-3</u> |
| **Resulting Guidelines Level** | **23** |

As is customary, the Plea Agreement did not make any representations about Tobias' criminal history category, as that would be determined by the court. (<u>Id.</u> at ¶ 21 (PageID#65-66).) Nonetheless, with a criminal history score of zero, and in Criminal History Category I (which is what the court ultimately found), the Guidelines sentencing range for Tobias at level 23 was *46 to 57 months*.

Based on these factors and Guidelines computations, the parties agreed in their Plea Agreement that they would "recommend that the Court impose a sentence within the range and of the kind specified pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations" of their Agreement. (<u>Id.</u> at ¶ 16 (PageID#64).) The parties agreed that "no other specific offense characteristics, Guidelines adjustments or Guideline departures apply." (<u>Id.</u> at ¶ 19 (PageID#65).)

The Plea Agreement included an appeal waiver which placed some limitations on Tobias' appellate rights. However, Tobias reserved the right to appeal, among other things, "any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement,

using the Criminal History Category found appliable by the Court." (Id. at ¶ 22 (PageID#66).) Thus, for any sentence in excess of 57 months (the district court imposed *120 months*), Tobias retained the right to appeal by the Agreement's plain terms. See United States v. Cota-Luna, 891 F.3d 639, 646 n.2 (6th Cir. 2018) (applying the same appeal-waiver provision to allow a defendant's appeal in another case with the same district judge).

**D. Change of Plea Proceedings.**

The hearing on Tobias' change of plea was conducted on July 7, 2022. (R. 47, Transcript of Plea Hearing ("TPH") (PageID#293-308).)

Tobias told the court he was 55 years old. (TPH at 4 (PageID#296).) The court reviewed the offenses of the plea and the possible penalties, including the possible mandatory minimum of 10 years, and 8 years of supervised release, due to Tobias' prior conviction. (TPH at 6 (PageID#298).)

The court explained to Tobias that the probation department would do an independent review and determine what the appropriate guideline range and calculation may be. The court told Tobias that the court was not bound to follow the calculation the parties had agreed to. (TPH at 8 (PageID#300).) The court told Tobias that it would consider a number of factors, including the nature and circumstances of the offense, the details surrounding it, and that "the type of drug being fentanyl, obviously very important, among other factors."  (TPH at 8 (PageID#300).)

The prosecutor reviewed the factual basis of the plea by summarizing the facts detailed above concerning the dates from March 31, 2020 to May 27, 2020, and that Tobias' distribution and possession with intent to distribute was for "more than 40 grams of a mixture and substance containing a detectable amount of fentanyl." The precise quantity involved was "295.75 grams of a mixture of fentanyl." (TPH at 12-13 (PageID#304-05).)

Tobias then entered guilty pleas to both counts, and the court accepted those pleas and found him guilty of those two counts. (TPH at 14 (PageID#306).) The court referred the matter to probation for the presentence report and it set sentencing for October 21, 2022. (Id.)

**E. Safety-Valve Proffer.**

On the same day as his guilty plea, July 7, Tobias and his counsel met at the U.S. Attorney's office in Akron for his safety-valve proffer. The Assistant U.S. Attorney for the case, Margaret Sweeney, was present, as were two of the U.S. postal service inspectors ("USPIS") who had been involved with the investigation. The district court judge was not at this meeting. The USPIS inspectors prepared a summary report entitled "Lance Tobias Safety Valve Proffer"; the following

summary is based on that two-page report.[1] (R. 36-1, Proffer Report.)

During the proffer, Tobias explained his role in the subject offense, answered the inspectors' questions, and truthfully provided the information he knew concerning the offense and his related offenses. He described generally his involvement as being that of "pitching" and "catching" U.S. mail packages on behalf of customers. (Id.)

The "pitching" involved him packing and mailing, via the U.S. postal service, of packages, some of which contained controlled substances. He was paid in cash. He said he could usually see what type of drug he was packaging and therefore knew what to charge; his typical fee to mail a package was $800 to $1,000. Sometimes a customer would drop off a package which was already packaged, and, when that happened, his fee would be based on the type of drug he knew that customer sold. (Id.)

When asked about the M/30 pills which were seized in this case in May 2020, he told the inspectors he thought the pills were "Roxies," which he believed were

---

[1] As noted below, the district court, at the sentencing hearing on October 21, 2022, ordered that this proffer report be submitted to the court for its review. The court then made that two-page report part of the record by filing it under seal with its order of January 18, 2023, which explained its January 4 denial of safety-valve relief. The report is in the district court's electronic record at R. 36-1 and is available to this Court on ECF. However, the district court's staff has explained to the undersigned that, due to an earlier IT problem with generating headers on their electronic documents, the report does not have PageID numbers.

- 13 -

pharmaceutical-grade pills. He said he did not know who the pills were intended for in Ohio, and that his customer in California gave him the name "P. Ransby" to use as the addressee for the package. (Id.)

The "catching" activity involved Tobias' receipt of mailed packages containing U.S. currency on behalf of customers. Tobias would count the money upon delivery and then transport it to the customer. He would charge a 5% commission. He set up mailboxes around Southern California to receive the money packages; he said he had received them from Ohio, Illinois, Michigan, and New York. (Id.)

He estimated for the inspectors that the most he made in any one year from his "pitching" and "catching" was approximately $60,000. Tobias told the inspectors he did not have any insiders at the USPS who assisted him in these activities. (Id.)

## F. Presentence Report.

With the sentencing set for October 21, a first revised PSR was submitted on October 5, 2022. (R. 22, First Rev. PSR (PageID#91-111, SEALED).) The probation officer concluded that Tobias has a criminal history score of zero and was in the lowest criminal history category, i.e., Category I. (Id. at ¶ 36-37 (PageID#98).) The PSR noted Tobias' 1994 conviction but concluded it did not count for criminal history points because Tobias was released nearly 20 years before. (Id. at ¶ 35.)

The probation officer concluded that Tobias was entitled to all 3 points for

acceptance of responsibility. (Id. at ¶ 30-31 (PageID#97).) As for the safety valve, the probation officer determined that Tobias "appears to meet the criteria set forth in 18 U.S.C. §3553(f)(1)-(5) [see infra p. 29, n.2 for the 5 requirements]; therefore, the Court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." (Id. at ¶¶ 63-64 (PageID#103).) The probation officer also noted that "the government agrees [Tobias] meets the criteria [for the safety valve]," and, accordingly, the period of supervised release shall be not more than 5 years. (Id. at ¶ 66.)

The only respect in which the PSR diverged from the Plea Agreement's calculations was a 2-point difference for the base offense level. The probation officer focused on the parties' agreement that the amount and type of drugs involved were 295.75 grams of a "fentanyl mixture." (R. 19, Plea Agreement at ¶¶ 19, 26-28 (PageID#65-68).) The probation officer cited an examination report dated June 8, 2020, by the "CCRFSL" (the acronym was not defined) which evidently concluded that "the pills had a net weight of approximately 295.75 grams and were found to contain Fentanyl and 4-ANPP." (Id. at ¶ 17 (PageID#96).) Based solely upon that reference in the "CCRFSL" report to "4-ANPP," the probation officer opined that the guideline for "fentanyl analogue," and not for fentanyl, should apply. (Id. at ¶ 23 (PageID#97).) That guideline for fentanyl analogue—i.e., USSG §2D1.1(c)**(5)**— made the base offense level 30, instead of the 28 stated in the Plea Agreement.

- 15 -

(*__Compare__* USSG §2D1.1(c)**(5)** *__with__* USSG §2D1.1(c)**(6)**.)

The *government* objected to the PSR's use of the higher guideline for fentanyl analogues. (R. 22, First Rev. PSR at p. 19, Government Objection (PageID#109).) Among other things, the government's objection noted that one of the requirements for a substance to be a chemical analogue—a requirement *not* satisfied with "4-ANPP"—is that it must have a substantially similar (or greater) pharmacological effect on the central nervous system as fentanyl. (Id., citing Comment 6 in 2D1.1 and 21 U.S.C. 802(32).)

Finally, the PSR noted that the probation officer did not find any factors as possible grounds for variance from the sentencing guideline provisions. The PSR also noted that, for similarly situated offenders in the last 5 years with a 25 level and Criminal History Category of I, the average length of imprisonment imposed (for those who received prison sentences) was 42 months and the median was 46 months. (R. 22, First Rev. PSR at ¶ 91 (PageID#108).)

## G. Sentencing Hearing, Day 1.

The sentencing hearing went forward as scheduled on October 21, 2022, but, due to the court's decisions during the hearing, it was a short proceeding that day. (R. 48, Transcript Sent. Hearing, Day 1 ("TSH1") at 1-16 (PageID#309-34).)

Tobias' counsel submitted a sentencing memorandum which averred that Tobias met the requirements of the safety valve based on his proffer with the

government on July 7, 2022. (R. 25, Sent. Memo at 6 (PageID#123).) The memo

also summarized Tobias' history and background, including:

- He was 56 years old at sentencing (born in 1966).

- He was born and raised in Cleveland, Ohio, where he had a difficult upbringing including because his father was in and out of prison and abused heroin, marijuana, and alcohol.

- He spent 7 years in the U.S. Air Force from 1984-91, where he learned HVAC skills.

- He has been married since 2014 and helps raise two stepchildren with his wife in California, where they live together in their home on Crestwold Avenue.

- He has been employed as a visiting health services provider since 2012.

- He is remorseful for this offense and has worked diligently, during pretrial confinement, to better himself and prepare for release.

- He has the support of a loving family and many friends who submitted letters on his behalf.

(R. 25, Sent. Memo at 3-8 (PageID#120-25); R. 25-1, 26-1, 26-2, 27-1, 27-2, 28-1,

Letters and Certificates (PageID#129-174).)

Tobias' counsel urged a sentence at the low end of the Guidelines range of

46-57 months for the Guidelines level of 23. (R. 25, Sent. Memo at 8 (PageID#125).)

The court began this very brief first day of the sentencing hearing by

distributing to the parties and counsel a document entitled "Public Safety Alert,"

issued by the DEA with a dateline of September 27, 2021, about the dangers of

counterfeit prescription pills containing fentanyl and methamphetamine. (R. 48, TSH1 at 2-3 (PageID#310-311).) The alert advised that "International and domestic criminal drug networks are mass-producing fake pills," some of which contain "deadly doses of fentanyl," and they are "falsely marketing them as legitimate prescription pills and killing unsuspecting Americans." (R. 29, Public Safety Alert (PageID#175-76).)

The judge told the parties that the DEA's Alert is "one of the reasons why the court believes an upward variance in this case is appropriate." (TSH1 at 3 (PageID#311).) The judge's strong views about fentanyl had been previewed during the plea hearing when, in discussing the sentencing factors, the judge had stated "[t]he type of drug being fentanyl, [was] obviously very important" (R. 47, TPH at 8 (PageID#300).) The judge likewise did so when he told Tobias, at the end of the plea hearing, that he must conduct himself "appropriately" while awaiting sentencing to avoid adding to "what is already going to be a very long and lengthy sentence." (Id. at 15 (PageID#307).)

The judge also made it immediately clear during that first day of the sentencing hearing that he was skeptical of any safety-valve relief for Tobias. The judge immediately challenged the government's attorney to defend the government's conclusion that Tobias met the safety valve's fifth requirement, the only one of the five which the judge raised any concern about. (R. 48, TSH1 at 4-5

(PageID#312-313).)

In response to the concern, the experienced AUSA—who had attended the proffer, whereas the judge had not—explained to the court in detail why the government believed Tobias more than amply satisfied that fifth requirement and was deserving of the safety-valve relief.

> The defendant provided information about his own involvement. He was extremely forthright with the government, with the agents. He provided information about others' involvement to the extent that it bore on his involvement in the case.
>
> The information that he provided was corroborated by other pieces of the investigation that were not necessarily known to him but were otherwise still determined to be truthful by the agent. And so the government believes that he met the fifth prong of the safety valve.

(TSH1 at 4 (PageID#312).)

When the judge asked if the government believed Tobias had truthfully provided all the information and evidence he had concerning the subject offenses, the AUSA responded "yes." (Id.) When the judge asked for more specifics, the AUSA provided those too:

> MS. SWEENEY: The defendant identified that his role in this organization was one of – it's not even really an organization. He identified that he was a pitcher and a catcher for drugs and money from his sort of home base in California.
>
> And that is consistent with the evidence we have in this case. There was a variety, as the Court is aware from the detention hearing we had in this case, a variety of kinds of drugs that were seized as part of the investigation into the defendant.

- 19 -

So it appears consistent that he was sort of working ad hoc to send drugs to Cleveland.

That information certainly was corroborated and consistent with what we have.

(TSH1 at 5 (PageID#313).)

The judge then focused on Tobias' relatively modest net worth statement in the PSR—which showed that Tobias and his wife owned their small home in California, with a book value of $1,000,000 and an unpaid mortgage of $863,000, contributing to a net worth of $214,500—and asked the AUSA if the government had done a "financial analysis" to verify Tobias' proffer. The AUSA again defended the government's satisfaction with the proffer, saying:

> We did not do a financial analysis necessarily, Judge, but it's certainly consistent with the packages that the Postal Service has linked to the defendant, particularly the fact that this was a package that was seized around 2004 in California, I believe, that was connected to the defendant.
> . . . .
>
> Judge, if the Court is concerned that the assets don't match with the information the defendant provided in the safety valve, I would say that the defendant was very forthright in the amount of packages he was involved with every year.
>
> I believe the number he gave us, the most -- that he made a significant amount of money every year from this, the most being I think [$]60,000 in one year was the number he gave us.
>
> So extrapolated over time, I mean, that is a significant amount of money and is consistent with what's reported in the PSR[.]

(TSH1 at 6-7 (PageID#314-15).) The AUSA also stated that Tobias is married, and

his wife has a job too. "I don't think any of it was inconsistent with the information he gave us." (TSH1 at 7-8.)

The judge also wanted to know if Tobias had told the government, to its satisfaction, where the drugs were coming from and who else was involved. The AUSA responded that Tobias had satisfactorily identified "the circumstances in which he got the drugs." (Id. at 10 (PageID#318).) When the judge wanted to know if Tobias identified, for example, the names of dealers he was working with, the AUSA remined the judge that Tobias' offense "was not a situation in which he was buying drugs and then shipping them to his own customers in Cleveland." (Id.)

Tobias' counsel likewise addressed the court's concerns by explaining that Tobias detailed his own activities during the proffer and, due to the nature of Tobias' role and the wide practice of using phony names on packages, Tobias did not have information about other people:

> He was apparently like a UPS store for traffickers. And much like traffickers, they themselves have individuals and third parties bring things to them.
>
> So to the extent that he would know the absolute ultimate origination of the drugs, he didn't have that information. He would basically mail things out. He gave a lot of information as to how things were being transferred or traveled.
>
> Money would come back. He doesn't even know who the money is coming back from. He would talk about -- he gave information as to how they would have cash wrapped in the mailing so that it could be not detected.

He gave actually a lot of information to the extent that the agents involved found it extremely illuminating to them as to the activity, how these things happened.

But in regards to providing information to other people, in regards to other people, he really doesn't even have that information. . . . There is like third-party individuals. He didn't know who he is sending it to. He just knows it's an address and a name. He doesn't know who he is sending it to, and he doesn't even know who he is receiving money back from.

(TSH1 at 11-12 (PageID#319-20).)

The AUSA even offered to present testimony from the case agent who had likewise attended the July proffer and was in the courtroom for the sentencing. (TSH1 at 11 (PageID#319).) The Judge declined that request, saying he wanted to see the proffer report because he wanted specifics, not generalities. (Id.) "I don't believe it, counsel. I don't believe over the timeframe involved, the amounts of money, all of what I see and what I read here in this PSI in the offense conduct, I don't believe that he doesn't know much more than what's being described here." The judge said: "I may be wrong, and I'll withhold judgment" until seeing the agent's report of the proffer. (Id. at 13.)

The court thus ordered the proffer report to be provided for its review, and the court would then resume the sentencing hearing on another date. (Id. at 15.)

## H. Day 2 of the Sentencing Hearing; Sentence, and Final Judgment.

The second day was held on January 4, 2023. (R. 42, Transcript Sent. Hearing, Day 2 ("TSH2") (PageID#249-287) (Sealed).) The proffer report of July 7, which

was summarized above in Part E, was provided to the court in advance as directed. (The court made that two-page report part of the record and placed it under seal, as noted above at p. 13, n.1. See R. 36-1.).

Tobias' counsel again urged the court, *without any dispute from the government*, that Tobias had provided the government with all the information in his possession during his proffer and had fully complied with the safety valve's fifth requirement. (TSH2 at 7-14 (PageID#255-62).) "He told everything that he could tell fully and completely and honestly and truthfully." (Id. at 8-9.) With respect to the court's persistent demand for "names," and for more than was given, counsel explained that Tobias does not have more information and cannot be expected to "make stuff up" in order to satisfy the court. (Id. at 13 (PageID#261).) Counsel also told the court, without contradiction by the AUSA or the case agent—both of whom attended the July 7 proffer—that, when the proffer was completed, "the postal inspector that was involved in it stated that was the most fruitful information-packed Safety Valve interview that he's ever had. The information was forthcoming. The information was complete." (TSH2 at 7 (PageID#255).)

The judge wasn't moved. His Honor concluded—absent any evidence—that there must be more information which Tobias could have provided, even though no one on the government's side ever made that contention. Based on his review of the proffer summary, the judge determined that Tobias wasn't credible in his proffer:

"He doesn't give any names. None. Nada. . . . I don't think that he's been honest, truthful, complete and given all the information known to him." (TSH2 at 7 (PageID#255).) The court thus found Tobias to be ineligible for the safety valve, thereby going against the parties' mutual request that the safety valve should be applied in Tobias' favor. (TSH2 at 9-16.) The court later issued a written order to "further detail[] [its] denial of [the safety-valve] relief." (R. 36, 36-1, Order & attached proffer (PageID#233-237).)

With the safety-valve issue resolved against Tobias, the court failed during the remainder of the January 4 hearing to calculate Tobias' Guidelines sentencing range. The court said it agreed with the PSR to use the base offense level of 30 (TSH2 at 6-7 (PageID#254-55)), but it never went beyond that to address acceptance of responsibility or otherwise determine the applicable Guidelines offense level. Instead, the court moved immediately to the 3553(a) factors. (TSH2 at 16 (PageID#264).) That promptly devolved into an argument between the judge and defense counsel about Tobias' net worth and how much of a fine the court would impose on top of a prison sentence. (TSH2 at 17-22 (PageID#265-70).)

After the court allowed Tobias to allocute, the court imposed a prison sentence of 120 months on each of Counts 1 and 2, to be served concurrently, and 8 years of supervised release. Count 3 was dismissed. The court also imposed a fine of $100,000.00. (TSH2 at 35-36 (PageID#283-84).)

- 24 -

This timely appeal followed. (R. 38, Notice of Appeal (PageID#244-45).)

## SUMMARY OF ARGUMENT

The district court clearly erred and denied Tobias due process when it refused to apply the safety-valve provision which would have required the court to sentence Tobias, on his guilty plea, without regard to the ten-year mandatory minimum. The Government, Tobias, and their respective counsel all agreed about application of the safety valve and that Tobias' proffer had been truthful, sufficient, and complete. Only the district judge disagreed, yet with no factual basis for doing so and no legitimate grounds for making contrary "credibility" findings about a proffer session which the judge had neither attended nor reviewed a transcript. The district court's safety-valve ruling, among other deficiencies, disregarded settled rules of fairness and reliable factfinding. It is the epitome of "clear error."

Tobias' sentencing also violated established law because the district judge did not calculate Tobias' Guidelines sentencing range during the sentencing hearing. That error should not be subject to harmless error review. But, even if it is, the error was not harmless including with respect to the $100,000 fine imposed on Tobias.

Tobias' case should be remanded for resentencing. Upon remand, Tobias respectfully requests reassignment to a different judge because the district judge demonstrated his inability, in this case, to separate his own preconceptions from reasoned conclusions and fair factfinding based on the actual evidence in the record.

# ARGUMENT

**I. The district court clearly erred, and subjected Tobias to an insurmountable burden in violation of law and due process, when the safety-valve relief of 18 U.S.C. §3553(f) and USSG §§5C1.2 and 2D1.1(b)(18) was denied on the basis of the district judge's speculation and biased personal opinions about additional information which the judge believed Tobias' proffer to the government should have been able to include, in circumstances where the government was fully satisfied with Tobias' proffer and supported his safety-valve relief.**

---

The district court clearly erred and denied Tobias due process in rejecting the requested application, by Tobias and the government, of the safety-valve provisions of 18 U.S.C. §3553(f) and USSG §§5C1.2 and 2D1.1(b)(18). Tobias' sentence must be vacated, and, on remand, Tobias should be resentenced by a different district court judge. See Cota-Luna, 891 F.3d at 649-51 (district court's sentencing in drug case was reversed and case was remanded to different district judge for resentencing in similar circumstances where the judge was "predisposed to impose a harsh sentence" and had rejected on "dubious grounds" safety-valve relief which was supported by the government).

## A. Standard of review.

This Court reviews de novo the district court's interpretation of the safety-valve provisions of §3553(f) and USSG §5C1.2. See United States v. Haynes, 55 F.4th 1075, 1077 (6th Cir. 2022); United States v. Miller, 734 F.3d 530, 539 (6th Cir. 2013). The district court's factual finding that Tobias did not meet the safety valve's fifth requirement is reviewed for clear error. See United States v. Reinberg,

62 F.4th 266, 268 (6th Cir. 2023); <u>United States v. Martin</u>, 2022 U.S. App. LEXIS 29856, at \*7-8 (6th Cir. Oct. 24, 2022); <u>United States v. Adu</u>, 82 F.3d 119, 124 (6th Cir. 1996).

A factual finding is clearly erroneous when the appellate court, "on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." <u>United States v. Young</u>, 847 F.3d 328, 342 (6th Cir. 2017). Addressing the application of the "clear error" requirement in a recent safety-valve case—in which this Court *reversed* the district court's failure to apply the safety valve as clear error—this Court identified several fundamental principles, all of which are deeply rooted in a criminal defendant's fundamental rights to due process and a fair hearing. <u>United States v. Barron</u>, 940 F.3d 903, 915-18 (6th Cir. 2019).

These include: there must be "evidence in the record" to support the district court's factfinding; the district court's "disbelief alone" cannot constitute the required evidence; mere "speculative inferences are never allowable, and cannot be regarded as evidence"; the "district court's findings must have 'some minimum indicium of reliability beyond mere allegation'"; and the district court cannot "determine that the defendant has not rendered a truthful and complete statement based solely on speculation, devoid of any factual support." <u>Barron</u>, 940 F.3d at 915-18 (citing cases).

The district court judge in <u>Barron</u> violated all these "clear error" principles

and it did so in a case where the *government* had aggressively urged the district court to *deny* the safety valve due to the defendant's allegedly deficient proffer. Here, the government vouched for the sufficiency of Tobias' proffer, agreed with the safety valve's application in his case, and presented absolutely no contrary evidence; yet the judge *still* rejected the safety valve in complete disregard of every one of these fundamental principles of clear error, thereby easily establishing that the judge clearly erred. The denial of the safety valve in Tobias' case was as clearly wrong as the sentencing errors which the same district court judge made in <u>Cota-Luna</u>, 891 F.3d at 649-51.

### B. Tobias satisfied all requirements to obtain safety-valve relief from the mandatory minimum of 10 years.

With his guilty plea to the conspiracy and distribution offenses involving more than 40 grams of a mixture containing fentanyl, Tobias was facing the prospect of a mandatory minimum of 10 years due to his decades-old conviction from 1994. If, however, Tobias received the benefit of the safety valve, his base offense level of 28 would be reduced to 25 (<u>i.e.</u>, with the three points for acceptance) and then to 23 with the additional two-level safety-valve reduction under 2D1.1(b)(18). That would make his Guidelines range, with his ZERO criminal history points, the range of *46 to 57 months*, and the court would be required to sentence him "without regard to any statutory minimum sentence." 18 U.S.C. 3553(f). The final PSR itself recommended a lower Guidelines range sentence, and not the 10-year mandatory

minimum, because "the defendant appears to meet the criteria set forth in [the safety-valve under] under 18 U.S.C. §3553(f)(1)-(5)." (R. 30, Final PSR at ¶ 63 (PageID#189).) The final PSR likewise noted that "the government agrees [Tobias] meets the criteria [for the safety valve]." (Id. at ¶ 66.) Only the district judge demurred, but with no evidence for doing so.

It is undisputed that Tobias meets the first, second, third, and fourth criteria of the safety valve.[2] The only issue was whether he met the fifth criteria—whether "he truthfully provided all information he had about the offense to the government." Barron, 940 F.3d at 914. If Tobias satisfied all five criteria, the federal sentencing statute commands that "the court *shall impose* a sentence pursuant to [the Sentencing Commission's] guidelines . . . without regard to any statutory minimum sentence." 18 U.S.C. §3553(f).

---

[2] The five requirements are: "**(1)** the defendant does not have—(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines; (B) a prior 3-point offense, as determined under the sentencing guidelines; and (C) a prior 2-point violent offense, as determined under the sentencing guidelines; **(2)** the defendant did not use violence or credible threats of violence or possess a firearm . . .; **(3)** the offense did not result in death or serious bodily injury to any person; **(4)** the defendant was not an organizer, leader, manager, or supervisor of others . . . .; **(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." 18 U.S.C. §3553(f)(1)-(5).

The safety valve is not discretionary. It is conditioned upon certain facts, but if those five factual conditions are met, a safety-valve award is mandatory. <u>Id.</u> <u>See also</u> <u>Barron</u>, 940 F.3d at 914 ("If a defendant meets his burden, application of the safety valve is mandatory[.]"); <u>United States v. Quirante</u>, 486 F.3d 1273, 1275-76 (11th Cir. 2007). That means that, "if a defendant has an advisory guidelines range lower than an otherwise applicable mandatory minimum"—as Tobias did at 46-57 months, which is lower than 10 years—"he ***must*** be given the benefit of the guidelines range in arriving at the advice that the guidelines furnish for the sentencing decision." <u>Quirante</u>, 486 F.3d at 1276.

Tobias has the burden, by a preponderance, of establishing his satisfaction of that fifth requirement. <u>Adu</u>, 82 F.3d at 123-24; <u>Barron</u>, 940 F.3d at 914; <u>United States v. Reinberg</u>, 62 F.4th 266, 268 (6th Cir. 2023). That burden, as to the fifth requirement, is that Tobias was required to show by a preponderance that he has truthfully provided the government "all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG §5C1.2(a)(5); <u>Barron</u>. "Willingly answering the government's questions is a must. But so is disclosing other relevant information known to the defendant related to his criminal conduct, as the safety valve applies 'only [to] those defendants who truly cooperate.'" <u>United States v. Sharp</u>, 2023 U.S. App. LEXIS 1408, at *4-5 (6th Cir. Jan. 18, 2023) (quoting <u>United States v. O'Dell</u>,

- 30 -

247 F.3d 655, 675 (6th Cir. 2001)). See also Adu, 82 F.3d at 124; Barron, 940 F.3d at 917; Reinberg, 62 F.4th at 268. If known, it would include "complete information regarding the immediate chain of distribution." Barron, 940 F.3d at 917.

Nonetheless, a defendant is *not* required to fabricate information or "make stuff up" to satisfy the whims of a particular factfinder. The statute makes that clear because it only requires the defendant to provide to the government the information and evidence which "*the defendant has* concerning the offense or offenses." 18 U.S.C. §3553(f)(5) (emphasis supplied); Barron, 940 F.3d at 917. "Of course, a defendant can disclose only what he knows." Sharp, 2023 U.S. App. LEXIS 1408, at *5. *A defendant can't give what he doesn't have*. And "[t]he fact that the defendant *has* no relevant or useful other information to provide or that the Government is already aware of the information *shall not* preclude a determination by the court that the defendant has complied with this [fifth] requirement." 18 U.S.C. §3553(f)(5) (emphasis supplied); see also USSG §5C1.2(a)(5).

In disregard of these provisions, there might be judges, from time to time, who profess frustration that a particular defendant does not know what that particular judge might imagine the defendant ought to know, Cota-Luna, 891 F.3d at 646; however, such biased and speculative decision-making is not grounded in fact and evidence. It also disregards that the safety valve is *intended* to benefit such lower-level drug conspiracy participants whose knowledge of the identity of and details

- 31 -

about other participants is—precisely because of their lower status within the conspiracy—strictly limited if non-existent. United States v. Carpenter, 142 F.3d 333, 336 (6th Cir. 1998).

Tobias complied with the affirmative disclosure requirements of the safety valve's requirement to truthfully provide to the government all pertinent information that was known to him about his offenses. He made the proffer on July 7, 2022, during an in-person proffer session with the AUSA and the agents of the USPIS. It was a lengthy session. As described more fully above at pp. 12-14 and in the summary report of the proffer (R. 36-1, Proffer Report), Tobias detailed his "pitcher" and "catcher" roles, described the process and his involvement, and fully provided what he knew to the government. He truly cooperated.

The fact that Tobias satisfactorily provided the information which he possessed was not only *Tobias'* conclusion, but it was also the conclusion of the *government* too, the party to whom the safety valve requires that he make his disclosures. The AUSA, who had been present for the July 7 proffer, told the court that Tobias "was extremely forthright with the government, with the agents," and she represented to the judge that Tobias had truthfully provided, to the government's satisfaction, the information and evidence he had concerning the subject offenses. (TSH1 at 4-5 (PageID#312-13).)

With respect to the court's insistence that Tobias must supposedly provide

"names," the AUSA told the court that Tobias had "provided information about others' involvement to the extent that it bore on his involvement in the case," and she explained that the government was able to corroborate his information "by other pieces of the investigation that were not necessarily known to him but were otherwise still determined to be truthful by the agent." (TSH1 at 4 (PageID#312).) Tobias' counsel likewise explained that the disclosure was truthful, full, and complete, and that any perceived deficiency because of a lack of "names" is because Tobias did not know the names. Tobias gave what he knew and is not required to "make stuff up" to indulge the speculation of a particular factfinder. (TSH2 at 7-14 (PageID#255-62).) Tobias' counsel also told the court, without contradiction by the AUSA or the case agent that, when the proffer was completed, "the postal inspector that was involved in it stated that was the most fruitful information-packed Safety Valve interview that he's ever had." (TSH2 at 7 (PageID#255).)

Tobias' statutory obligation was to provide "to the Government" "not later than the time of the sentencing hearing" a truthful and complete disclosure. Tobias did that, and he did so to the complete satisfaction of the representatives of "the Government" to which his disclosures were required to be made. They gave him, in effect, an A+ for his proffer — "the most fruitful information-packed Safety Valve interview that [the agent has] ever had."

What more can Tobias do? When the government supports the safety-valve

relief and vouches for the sufficiency of the proffer at the sentencing hearing, there is nothing more that can reasonably be required of him than to summarize the proffer for the court and present the government's satisfaction, all of which he did. In a different case, "[w]here the government *challenges* [the] defendant's claim of complete and timely disclosure," more evidence can and will be required of the defendant "that demonstrates such disclosure." <u>Adu</u>, 82 F.3d at 125 (emphasis supplied). But that was obviously not *this* case. All the participants in the proffer, and its intended beneficiary (the government) were fully satisfied.

Tobias did all that the statute requires and he fully met his burden, and the government agreed. This should have been an easy case for the safety valve. So why wasn't it? The answer to that question most probably lies more with the district judge's loathing of fentanyl offenses which might allegedly involve "counterfeit pills" (R. 47, TPH at 8 (PageID#300); R. 29, Public Safety Alert (PageID#175-76); R. 34, Order re. Three Articles Court Will Consider (PageID#214-225))—and with the judge's obvious predisposition (as in <u>Cota-Luna</u>) to impose a harsh sentence— than with any fair, unbiased, or proper application of the *safety valve*.[3]

---

[3] The Order at R. 34 was filed on *January 5*, 2023, the day *after* Tobias was sentenced on January 4; but the judge mentioned one of the three articles on January 4. (R. 42, TSH2 at 32 (PageID#280).)

### C. The district court's "factfinding" on the safety valve was predominated by speculation, guesswork, advocacy, and bias, and is the epitome of "clear error."

The district judge's role at sentencing with respect to the safety valve is to first give the government "the opportunity to make a recommendation," and then make a factual finding as to whether the defendant has met his preponderance burden. 18 U.S.C. §3553(f). The district court, it is true, is the ultimate factfinder here, *but* that lofty duty also entails the obligations to apply the fundamental rules of fair and reliable factfinding *and* to humbly accept that a fair factfinder is not to become an advocate for one side or the other. It also includes the duty to recognize that the defendant's burden is preponderance, not something greater than that. The district court failed these duties in Tobias' case.

To begin with, the court was completely dismissive of the government's well-grounded recommendation and representations about the sufficiency of Tobias' proffer. The statute *requires* the court to seek the government's recommendation for a reason: Because the government will be a reliable source of information about the sufficiency of any safety-valve proffer, much more so than any district court judge, and even more so in a guilty-plea case such as this where there was no trial and no pretrial proceedings at which evidence was presented. Indeed, the AUSA and the case agents were present for Tobias' proffer, and they know their case and the details of their lengthy investigation, vastly more so than a judge assigned to the case after

an indictment. A judge simply does not have anywhere near their level of knowledge about their case; and the judge did not have it in this case. There were thus no reasonable grounds for the district court to reject the government's recommendation and representations about the sufficiency of Tobias' lengthy proffer interview which they had all attended, but which the judge had not.

Where, as here, the defendant's counsel and the government's counsel had accurately described the proffer to the court, agreed on its sufficiency and completeness, and the government had vouched for its truthfulness based on the entirety of the government's investigation, the defendant has met any fair assessment of what "preponderance of evidence" requires in this context. Preponderance means that a fact is more likely true than not. United States v. Moses, 289 F.3d 847, 852 (6th Cir. 2002). As is the case here, it is more likely true than not that the defendant made a truthful and sufficient proffer under the fifth criterion when the defendant presents evidence at his sentencing that he made a timely pre-sentence proffer, that the proffer was lengthy and informative, that the proffer was attended by the AUSA and two of the case agents, that the AUSA and case agents were all satisfied with the proffer and deemed it to be "extremely forthright" and corroborative of other aspects of their investigation, and that the proffer was described by the case agent as among the most fruitful information-packed proffers they've ever had. Further, where all the evidence supports only one conclusion, clearly a preponderance of the

evidence exists to support that conclusion.

This Court in <u>Barron</u> helpfully explained that "[o]nce a defendant claims he has satisfied his burden, the government may challenge his entitlement to relief under the safety valve [by either] offer[ing] affirmative evidence to show that a defendant is not being truthful [or] impeach a defendant's argument by pointing out inconsistencies or implausibility." <u>Barron</u>, 940 F.3d at 917. The government did not do *any* of that here; on the contrary, the government agreed that Tobias had satisfied his burden and it represented to the court that Tobias had been truthful, cooperative, and forthright. As in <u>Barron</u>, where this Court *reversed* the denial of the safety valve, ***"there [was] no evidence—nor [did] the government even allege—that [the*** ***defendant] was evasive or failed to cooperate."*** <u>Id.</u> at 918.

*That* was the status of the safety-valve evidence at the conclusion of Tobias' sentencing hearing, yet the judge found it insufficient to meet Tobias' relatively modest preponderance burden. The court thereby misapplied or misperceived the applicable burden and effectively enforced a higher burden, one which appeared to be a moving target. As in <u>Cota-Luna</u>, the district judge's actions and comments (<u>e.g.</u>, as early as the *change-of-plea hearing*, that Tobias should be preparing for a "very long and lengthy sentence") indicates that "the district judge had made up his mind" that the safety valve would be rejected, and Tobias given a harsh sentence, "without having received any evidence" to support that conclusion. <u>Cota-Luna</u>, 891 F.3d at

650. Nonetheless, on a proper and unbiased assessment, Tobias met his burden because there was no *evidence* going the other way, nothing to refute the sufficiency of Tobias' showing. There was *only* the judge's personal speculation, bias, and guesswork about what the judge felt Tobias should be able to disclose. Speculation, bias, and guesswork are not evidence.

Nor was there any basis for the court to demand to see the written "report" of the proffer. The lawyers who had been present for the proffer had capably and accurately summarized its contents for the judge during Day 1 of the sentencing hearing, with no disputes about its sufficiency by any of those who had attended the proffer. It was described as "extremely forthright," and "consistent" with what we have, and "corroborative" of other information known to the investigation. The AUSA even offered to provide the agent's *testimony*, but the judge immediately rejected that, proclaiming he wanted "specifics." (TSH1 at 11 (PageID#319).) For the judge to then demand the government's written report on the proffer, as somehow being a presumably better recitation of the proffer than testimony from the agent, the judge revealed that he apparently viewed his role here as an advocate against the safety valve; rather than serving as an impartial factfinder of Tobias' preponderance burden, the court was searching for reasons to *oppose* the proffer's sufficiency. Given that no such reasons were forthcoming from the participants in the proffer, the judge chose to scrutinize the government's summary report.

- 38 -

In doing so, the judge proclaimed that he had not prejudged the matter, saying he would "withhold judgment until I see the [agent'] written reports." (R. 48, TSH1 at 12-13 (PageID#320-21); R. 42, TSH2 at 34 (PageID#282).) But it certainly appears that the judge *did* prejudge the matter, including by so quickly dismissing the unanimous representations of the parties' counsel and refusing to hear the agent's testimony. *They* knew their case and how Tobias fit into it; the judge did not.

The judge continued as an advocate against the safety valve after he received the agent's report. That report was only a summary of the lengthy proffer meeting, only two pages, but it confirmed that the parties' counsel had accurately described the July 7 proffer to the court during both days of the sentencing hearing. Yet despite the report's brevity and despite the fact that the judge had not been present for the proffer meeting which was summarized therein, the judge made "credibility" findings against Tobias, based on that 2-page summary, which were the *polar opposite* of the credibility findings of the AUSA and case agents who had *attended* the proffer, who had observed Tobias as he made it, and who were all amply satisfied with its truthfulness, completeness, and forthrightness.

Those contrary purported "credibility" findings by the district court are not entitled to any deference in this appeal. All the judge had was a written summary of Tobias' unrecorded, un-transcribed statement, which the judge had not seen nor heard. Allowing such a greatly flawed "credibility judgment" would effectively turn

the safety valve into a discretionary award and violates due process requirements. The judge did not see Tobias' proffer. He did not even have a transcript to read—only the 2-page summary by the USPIS agents. A credibility determination based on nothing more than a summary of a statement departs fundamentally from the traditional idea of a credibility judgment. See, e.g., United States v. Raddatz, 447 U.S. 667, 672-84 (1980); United States v. Alvarado-Rivera, 412 F.3d 942, 949-50 (8th Cir. 2005) (en banc) (Bright, J., dissenting). The due process analysis of Raddatz "does not countenance a credibility finding *in the first instance* by a judge who neither saw nor heard the statements being assessed, nor had a transcript of those statements, but had merely the prosecutor's written summary of the statements." Id., 412 F.3d at 952 (emphasis in original).

This Court, on appeal, has the same cold record the trial judge had insofar as Tobias' proffer on July 7 is concerned. The trial judge did not see the nuances of statement and demeanor on July 7 which inform a full credibility judgment any more than this Court would be able to see them. Only the AUSA and the case agents, representing the government, saw those things, and they all found the proffer to be sufficient and truthful, and both attorneys told the court as much. The deferential "clear error" standard requires reviewing courts to "defer to a district court's findings about what transpired" or to its interpretation of evidence which the district court viewed. United States v. Estrada-Gonzalez, 32 F.4th 607, 614 (6th Cir. 2022);

Reinberg, 62 F.4th at 269. But here the district court was not present for the proffer, did not *view* it, and does not have the same information as do the parties and counsel who attended the proffer and whose knowledge of what transpired is thus better than the court's. Tellingly, the opposing parties agreed on the interpretation of the evidence that was offered to the court. As a result, there was one unanimous and consistent view of the proffer evidence as represented to the court by those in attendance, on *both sides* including the government; the only contrary view was that of the district judge who wasn't there. The unanimously held view is a "permissible view of the evidence." The factfinder's biased opposing view, in these circumstances, is not; it is thus clearly erroneous. Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985).

The lower court's fact-finding failed to meet the required standards, and is clearly erroneous, because it was so reliant on unbridled speculation which is devoid of any evidence or any record support. Such evidentiary deficiencies are fatal when they are the focus of the *government's* efforts to defeat a defendant's entitlement to the safety valve; they are equally fatal when it is the district judge who has invoked them. Neither the government nor the court can determine that a defendant has failed to render "a truthful and complete [safety-valve] statement based solely on speculation, devoid of any factual support." United States v. Collins, 924 F.3d 436, 443 (7th Cir. 2019). To refute a "fact-based submission by the defendant," there

must be "a fact-based rebuttal, not rank speculation." <u>Barron</u>, 940 F.3d at 917 (quoting <u>Collins</u>, 924 F.3d at 443).

It was speculation and guesswork by the court that Tobias failed to provide sufficient details about his "customers." The court was skeptical that Tobias "could provide not even the slightest detail about those providing him the drugs for mailing" and "no information regarding the individuals that picked up the currency from him following his receipt of those packages." (R. 36, Order at 4 (PageID#236).)

However, the AUSA represented that Tobias did provide information about the involvement of others to the extent that it bore on Tobias' involvement in the case, even if Tobias did not know names. Tobias' counsel likewise explained that Tobias did not know the names because it is typical in drug distribution activities for participants to remain anonymous to one another, and that was the case here. Tobias is not required to make up names to appease the court. And what good would it do for him to do so? By their very nature, drug conspiracies are based on artifice, anonymity, and deception. For example, aliases and fake names abound in drug trafficking. But introducing more fake names is counterproductive and is the epitome of the type of useless, irrelevant information which is already well known to the government, and whose absence from a defendant's proffer "shall not preclude a determination by the court that the defendant has complied with [the fifth] requirement." 18 U.S.C. §3553(f)(5).

- 42 -

The same is true of the phone numbers. The district judge criticized the proffer because Tobias, in the judge's view, failed to provide "even a phone number for any of his customers." (R. 36, Order at 5 (PageID#237).) But there was no evidence whatsoever that Tobias knew any pertinent phone numbers, much less that he could recall phone numbers after being in pretrial confinement, in Ohio away from his home in California, for almost two months. Nor was there any evidence that "customers" used phones whose numbers had any usefulness to the government or anyone else, given the ubiquity in drug trafficking of burner phones and other short-usage and easily disposable identity-concealing devices.

Just as with names, Tobias was not required to make up phone numbers to appease the court. And what good would phone numbers do when dealing with a drug business based on artifice, anonymity, and deception? The purported phone numbers to temporary burner phones of anonymous drug cohorts—even if such numbers were ever known to Tobias and/or recalled by him (of which there was no evidence)—is another example of the type of useless, irrelevant information which is already well known to the government and whose absence from a defendant's proffer "shall not preclude a determination by the court that the defendant has complied with [the fifth] requirement." 18 U.S.C. §3553(f)(5).

There was no *evidence* to the contrary about names and numbers, and no inconsistent or contrary prior statements by Tobias about his drug conspiracy

activities to suggest he had been untruthful on these issues during the proffer. There was only the court's speculation that Tobias must have known the names and numbers of unknown cohorts.

Similarly, the court identified other topics on which it believed Tobias did not provide information which the judge thought Tobias should possess (e.g., "how he communicated with customers," "how he arranged to provide the currency," "how potential drug dealers contacted him," R. 36, Order at 4-5). But there is no evidence that Tobias was not forthright in his lengthy proffer on those topics, and, to the extent the judge wanted more details, "there is no evidence in the record demonstrating that the government ever asked" Tobias for such details. Barron, 940 F.3d at 918. When poring over a brief 2-page summary of a lengthy proffer, many months after the fact, there will *always* be something a judge might point to wishing there was additional detail. But the government gave Tobias' July 2022 proffer, in effect, an A+. There was no justification, and it misapplied the preponderance burden, for the court to insist after the fact, in January 2023, that it has to be A++. The standard the court imposed could not be met. How does a defendant *disprove* that he has information which only the judge, reviewing a proffer after the fact which had satisfied all those present for it, presumes incorrectly the defendant should have?

What is more, a lack of some information by lower-level participants like Tobias is to be *expected* in drug conspiracy offenses, a fact which the district court

failed to appreciate about the charged offenses. Tobias was at the lower levels of the distribution conspiracy at issue here. As a "pitcher" and "catcher," who only mailed and received packages, his services had aspects of both a "courier" and a "mule." See, e.g., United States v. Johnson, 379 F. Supp. 3d 1213, 1220-22 (M.D. Ala. 2019). Those functions are the eighth and ninth lowest out of the Sentencing Commission's nine categories of "offender functions," which decrease in culpability. See United States Sentencing Commission, *2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, at 166-77 (2011).[4] Drug offenders are only required to provide what they know to obtain safety-valve relief; a district court thus commits clear error when it rules against the sufficiency of a lower-level offender's fifth requirement based upon the court's speculation that the particular offender should have a level of information which lower-level offenders are known to typically lack. See also Natasha Bronn, "Unlucky Enough to Be Innocent": Burden-Shifting and the Fate of the Modern Drug Mule Under the 18 U.S.C. §3553(f) Statutory Safety Valve, 46 COLUM. J.L. & SOC. PROBS. 469, 494-95 (2013) ("[A] practical and realistic approach to the use of the safety valve [is] based upon the commonsense observation that, in the realm of narcotics operations, a low-level offender will rarely know the same information or possess the same skills as upper-

---

[4]Available at:
https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/mandatory-minimum-penalties/20111031-rtc-pdf/Chapter_08.pdf.

level offenders.").

### D. The case law fully supports a finding of clear error here.

The case law also flatly disallows the type of factually deficient and speculation-based denial of the safety-valve's fifth requirement as occurred here.

Barron is one recent example. The district court here made many of the same errors which compelled reversal of the district court's denial of the safety valve in Barron: No evidence was offered that Tobias knew the names or phone numbers of "customers" or that he was less than forthright in his disclosures, and it was "not unreasonable to assume" that Tobias, as a lower-level offender, would not have such information "because of [his] relatively low position in the criminal enterprise." Barron, 940 F.3d at 918. As in Barron, "the record, taken as a whole, will not support a finding that [Tobias] has failed to provide a truthful and complete proffer," and the district court's "lack of confidence in the proffer is insufficient, in and of itself, to justify a denial of access to the safety valve." Barron, 940 F.3d at 918. See also United States v. Miranda-Santiago, 96 F.3d 517, 529 (1st Cir. 1996) (denial of safety valve cannot be based simply on assertion that "'We don't believe the defendant,' and doing nothing more."); United States v. Medina, 665 F. App'x 273, 274 (4th Cir. 2016) ("The district court's [safety-valve] conclusion that there was potentially other criminal activity outside of the United States is purely speculative, impossible to disprove, and irrelevant"); United States v. Lima-Rivero, 971 F.3d 518, 521-22

(5th Cir. 2020) (mere speculation about truthfulness of proffer is not sufficient); United States v. Miller, 179 F.3d 961, 969 (5th Cir. 1999) (rejecting assertion that defendant was untruthful as "merely speculative"); United States v. Diaz-Cardenas, 351 F.3d 404, 409 (9th Cir. 2003).

Finally, the appellate cases—of which the undersigned is aware—which have *affirmed* a district court's *denial* of the safety valve for failure to meet the fifth requirement have occurred in circumstances where *the government*, with sufficient evidentiary support, *opposed* the sufficiency and/or truthfulness of the defendant's proffer. See, e.g., Reinberg, 62 F.4th at 268-69 (government opposed safety valve after both of two attempts by defendant to meet it, and it presented evidence and argument against its application); Sharp, 2023 U.S. App. LEXIS 1408, at **3-7 (government opposed safety valve for defendant and presented evidence and arguments against its application); United States v. Martin, 2022 U.S. App. LEXIS 29856, at *8 (6th Cir. Oct. 24, 2022) (same); United States v. Testa-Vega, 2018 U.S. App. LEXIS 19228, at *2-6 (6th Cir. July 12, 2018) (same); Adu, 82 F.3d at 124-25 (same); United States v. Salgado, 250 F.3d 438, 459-60 (6th Cir. 2001) (same); Collins, 924 F.3d at 444-45; United States v. Alvarado-Rivera, 412 F.3d 942 (8th Cir. 2005).

The undersigned is not presently aware of a reported case where denial of the safety valve was *upheld* in circumstances such as this where the AUSA and

government agents were all fully satisfied with the defendant's proffer, and urged application of the safety valve, and it was *only* the district judge's speculation which doomed the defendant to a mandatory minimum. In fact, this Court's decision in Cota-Luna was a case where all parties supported the safety valve based upon defendants' proffers, but the district judge rejected the safety valve. This Court vacated the sentences, and remanded for resentencing by another judge, based in part on the judge's "dubious" rulings including in denying the safety valve. Cota-Luna, 891 F.3d at 649-50.

*If* there are cases like Tobias'—where a district court was *affirmed* after rejecting the sufficiency of the fifth requirement despite the government's affirmative representation of the proffer's truthfulness and sufficiency and the government's advocacy for the safety-valve's application in the defendant's favor— they would appear to be outliers.

For the foregoing reasons, the record contradicts the district court's advocacy against Tobias on the safety valve. As affirmed by the government, Tobias cooperated and truthfully provided the government with the information he had concerning the subject drug activities. Because there is no record evidence which conflicted with the unanimously represented sufficiency of Tobias' proffer statements, and no evidence that Tobias had made any inconsistent or conflicting statements about his drug activities, he met the fifth prong of the safety valve and

was entitled to the safety-valve's application. The trial court clearly erred in holding otherwise.

**II. The district court committed significant procedural errors—which require resentencing—when it failed to calculate Tobias' Guidelines sentencing range and imposed a $100,000 fine which was determined without regard to a properly-determined Guidelines range and in derogation of the Guidelines instructions.**

To determine Tobias' sentence, the court must begin "by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007). Procedural error occurs when the district court "*fail[s] to calculate* (or improperly calculat[es]) *the Guidelines range*, treat[s] the Guidelines as mandatory, fail[s] to consider the §3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." United States v. Fowler, 819 F.3d 298, 304 (6th Cir. 2016). "[D]istrict courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904 (2018). The "failure to calculate the Guidelines range renders a sentence procedurally unreasonable." Fowler, 819 F.3d at 305.

Even when a mandatory minimum is potentially in play, the district court must *still* first determine the applicable Guidelines sentencing range without regard to the mandatory minimum, including because "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the

statutorily required minimum sentence shall be the guideline sentence." USSG §5G1.1(b). That provision cannot be properly applied, to determine the "guideline sentence," unless the court first determines "the applicable guideline range." Id.

This Court recently reaffirmed these controlling principles in United States v. Gates, 48 F.4th 463 (6th Cir. 2022), cert denied, 143 S. Ct. 640 (2023). There, on some similar facts to Tobias' case involving a potential mandatory minimum, the Court vacated and remanded for resentencing because the district court failed to calculate the applicable guidelines sentencing range. The Court explained: "At sentencing the district court has an affirmative obligation to calculate the Sentencing Guidelines. Reference to the mandatory minimum is no substitute for the explicit requirement to calculate [defendant's] Guideline. The district court's reference to the mandatory minimum sentence is not sufficient to constitute calculating [defendant's] Guidelines range." Id. at 470.

The Court further addressed whether the failure to calculate the Guidelines can ever be harmless error, noting that, distinct from a "miscalculation," the question of "[w]hether a sentence may be affirmed when the district court *fails* to calculate the Sentencing Guidelines seems to be an issue of first impression in this Circuit." Id. at 470 (emphasis supplied).

The district court failed to calculate Tobias' Sentencing Guidelines. The court

began to do so, setting the base offense level (incorrectly) at 30,[5] but then, after rejecting the safety valve (and committing clear error in doing so, as addressed above), the court never went beyond that to address acceptance of responsibility (all parties agreed Tobias was entitled to 3 points) or to calculate the final Guidelines sentencing range. Instead, the court moved immediately to the §3553(a) factors and imposed the 10 years. (R. 42, TSH2 at 6-7, 16 (PageID#254-55, 264).)

The Court's failure to calculate Tobias' Guidelines sentencing range is a significant procedural error which requires resentencing. Gates, 48 F.4th at 472. Such a complete failure to calculate a criminal defendant's Guidelines sentencing range should not be subject to harmless error review. But, *even if*, *arguendo*, harmless error review applies, the error was not harmless in Tobias' case. In fact, it

---

[5] The correct base offense level (before the safety valve and acceptance) for Tobias' offense of conviction was *28* because the agreed quantity of fentanyl was 295.75 grams (and was thus at least 280 but less than 400 grams). USSG 2D1.1(c)(6). The probation department's unilateral diversion into a deep dive about the chemistry of "fentanyl analogues," applied to a substance called "4-ANPP," was completely unjustified, contrary to the plea, beyond their expertise, and resulted in the erroneous determination that a substance with "4-ANPP" is supposedly a "fentanyl analogue." It is not. As noted in the *government's* objection to the PSR, the substance must have a substantially similar (or greater) pharmacological effect on the central nervous system as fentanyl in order to be a "fentanyl analogue." (R. 22, PageID#109) (citing Comment 6 in 2D1.1 and 21 U.S.C. 802(32).) "4-ANPP" does not meet that requirement according to two DEA experts whose declarations were submitted by the government. (R. 33, 33-1, 33-2, PageID#206-213.) Indeed, that "pharmacological effect" requirement is one which this Court's own caselaw has recently acknowledged for fentanyl analogues. See In re Jones, 2022 U.S. App. LEXIS 24277, at *3-4 (6th Cir. Aug. 26, 2022).

only led to more procedural errors, especially as to the $100,000 fine.[6]

The $100,000 fine which the court imposed was a Guidelines-devoid exercise of arbitrariness. The Guidelines fine for Tobias' offense depended upon an accurate calculation of the Guidelines sentencing range, as the PSR recognized (R. 30, Final PSR at ¶ 75 (PageID#191)) and the law requires. See USSG §§5E1.2(c)(3), (c)(4). But the court failed to calculate the Guidelines; thus, the applicable Guidelines fine range was never determined. At an offense level of 30, the Guidelines fine range would be from $30,000 up to the statutory maximum fine (because of the 1994 conviction) of $8 million. At an offense level of 27, the fine range would be from $25,000 to $8 million; and for an offense level of **23 to 25** (Tobias claims it should have been 23), the range would be ***$20,000 to $8 million***, which was the Guidelines fine range stated in the PSR with its calculated Guidelines sentencing level of 25. (R. 30, Final PSR at ¶ 75 (PageID#191).)

What is more, the Guidelines instruct that, before imposing a fine, sentencing judges "shall consider," among other factors, "the defendant's ability to pay the fine" and "the burden that the fine places on the defendant and his dependents." USSG §5E1.2(d)(2)-(3); United States v. Davis, 858 F. App'x 821, 824 (6th Cir. 2021).

---

[6] The Statement of Reasons filed on January 18, 2023, a record-keeping document (Gates, 48 F.4th at 469), did not correct or cure the court's procedural error of January 4. It reported the Guidelines offense level as level 30. (R. 37, Statement of Reasons at 1 (PageID 240).)

Based on probation's evaluation of Tobias' assets, and arriving at an estimated net worth of $214,500, the PSR determined that "it does not appear that [Tobias] has the ability to pay a fine." (R. 30, Final PSR at ¶¶ 59-62 (PageID#188-89).)

By not calculating the Guidelines, the court never determined or addressed the applicable fine range under the Guidelines. Nor did it explain why Tobias, at age 56 and already ordered to serve a decade in prison, should also receive a fine which is *5 times* higher than the minimum fine as determined under the properly calculated Guidelines range and is double the minimum fine for an offender whose Guidelines were as high as **38** and above. The federal sentencing data also suggests Tobias' $100,000 fine is way out of proportion for a drug trafficking offense. In FY 2021, for example, the mean fine for 811 federal drug trafficking cases was $8,071 and the median was $1,508.[7] In FY 2022, the mean for 1,139 such cases was $5,901 and the median was $1,000.[8]

By not calculating the Guidelines, the court also predictably "failed to remain cognizant of them throughout" the sentencing proceeding, <u>Rosales-Mireles</u>, 138 S. Ct. at 1903-04, which thereby resulted in the court's failure to address "the burden that the fine places on the defendant and his dependents." USSG §5E1.2(d)(3).

---

[7] *2021 Annual Report and Sourcebook of Federal Sentencing Statistics*, at p. 66, Table 17 (U.S. Sentencing Commission 2021).

[8] *2022 Annual Report and Sourcebook of Federal Sentencing Statistics*, at p. 66, Table 17 (U.S. Sentencing Commission 2022).

Tobias' small two-bedroom family home (1,619 sq. feet)[9] is his most significant asset, on which there is an enormous mortgage, yielding a "net value" of only $137,000. Although it is certainly true, as the judge suggested, that Tobias can try to sell assets to pay a fine, that fails to recognize the home is shared with Tobias' wife, Tobias can earn only de minimis income while in prison, and he will be in his mid-60's when he's released.

## CONCLUSION

For these reasons, and in the interest of justice, Tobias requests that this Court reverse the judgment, vacate the sentence, and remand for resentencing. Given that the district judge demonstrated bias and unreasonableness, and committed clear error, Tobias respectfully requests that his case be remanded to a different district court judge.

Date:  May 30, 2023

Respectfully submitted,

/s/ Timothy F. Sweeney

Timothy F. Sweeney (0040027)
LAW OFFICE OF TIMOTHY F. SWEENEY
820 West Superior Ave., Suite 430
Cleveland, Ohio 44113
(216) 241-5003
(216) 241-3131 – fax
tim@timsweeneylaw.com

Counsel for Appellant Lance Tobias

---

[9] https://www.zillow.com/homedetails/3521-Crestwold-Ave-Los-Angeles-CA-90043/20567804_zpid/.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing Brief was prepared using a proportionally spaced type-face in Microsoft Word (Times New Roman 14 Pt), and that, according to the Microsoft word-count feature, there are 12,990 words in this brief, exclusive of the Table of Contents, Table of Authorities, Statement in Support of Oral Argument, Addendum, Certificates of Counsel, and the Fact Sheet. Fed. R. App. P. 32(a)(7)(B)(iii); 6 Cir. R. 28(b).

/s/ Timothy F. Sweeney

Timothy F. Sweeney
Counsel for Appellant Lance Tobias

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 30, 2023, the foregoing BRIEF OF APPELLANT LANCE TOBIAS was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy F. Sweeney

Timothy F. Sweeney (OH 0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY
Counsel for Appellant Lance Tobias

**APPELLANT LANCE TOBIAS'S**
**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Appellant Lance Tobias, by and through counsel and pursuant to Rule 30 of the Sixth Circuit Rules, hereby states that the district court has an electronic record of all documents, pleadings, orders, notices, and transcripts that are relevant to this appeal, and all items listed in 6th Cir. Rule 30(f)(1) are included in that electronic record. Accordingly, there are no documents to include in an appendix (6th Cir. R. 30(b)), and an appendix is not to be filed as per 6th Cir. Rule 30(f)(1).

To facilitate the Court's reference to the district court's electronic record, Tobias hereby makes his designation of relevant district court documents; see 6 Cir. R. 30(f)(1):

| **Record No.** | **Date** | **Description of item in district court's electronic record with PageID#** |
|---|---|---|
| 1 | 04/13/2022 | Indictment (PageID#1-3) |
| 12 | 05/11/2022 | Trial Order (PageID#39-46) |
| 13 | 05/15/2022 | Order of Detention (PageID#47-79) |
| 17 | 07/06/2022 | Notice of Intent to Plea (PageID#56-57) |
| 18 | 07/07/2022 | USA Notice re Prior Conviction (PageID#58-59) |
| 19 | 07/07/2022 | Plea Agreement (PageID#60-71) |
| 22 | 10/05/2022 | First Rev. PSR (PageID#91-111, SEALED) |
| 24 | 10/06/2022 | Notice of Possible Upward Variance (PageID#117) |
| 25 25-1 | 10/14/2022 | Defendant's Sentencing Memo with exhibits (PageID#118-128, 129-136) |

| 26,<br>26-1<br>26-2 | 10/17/2022 | Def. Additional Sentencing Exhibits (PageID#137-164) |
|---|---|---|
| 27<br>27-1<br>27-2 | 10/19/2022 | Def. Additional Sentencing Exhibits (PageID#165-170) |
| 28<br>28-1 | 10/20/2022 | Def. Additional Sentencing Exhibits (PageID#171-174) |
| 29 | 10/24/2022 | Public Safety Alert (PageID#175-76) |
| 30 | 10/26/2022 | Final PSR (SEALED) (PageID#177-199) |
| 33<br>33-1<br>33-2 | 01/03/2022 | USA Sentencing Exhibits with declaration of two DEA experts (PageID#206-213) |
| 34<br>34-1<br>34-2<br>34-3 | 01/05/2023 | Order of Three Articles Court Will Consider at Sentencing (PageID#214-225) |
| 35 | 01/18/2023 | Judgment (PageID#226-232) |
| 36<br>36-1 | 01/18/2023 | Order & attached 2-page proffer report (SEALED) (PageID#233-237, proffer report (R.36-1) is on ECF but does not have a PageID# per court's staff) |
| 37 | 01/18/2023 | Statement of Reasons (PageID#240-243) |
| 38 | 01/18/2023 | Notice of Appeal (PageID#244-45) |
| **Transcripts** | | |
| 47 | 07/02/2022<br>(filed 03/22/23) | Transcript of Plea Hearing on July 2, 2022 ("TPH") (PageID#293-308) |
| 48 | 10/21/2022<br>(filed 03/22/23) | Transcript Sent. Hearing, Day 1 on October 21, 2022 ("TSH1") (PageID#309-34) |

| 42 | 01/04/2023 (filed 02/07/23) | Transcript Sent. Hearing, Day 2 on January 4, 2023 ("TSH2") (PageID#249-287) (Sealed) |

Respectfully Submitted,

/s/ Timothy F. Sweeney

Timothy F. Sweeney (0040027)
LAW OFFICE OF TIMOTHY F. SWEENEY
820 West Superior Ave., Suite 430
Cleveland, Ohio 44113
(216) 241-5003
tim@timsweeneylaw.com

Counsel for Appellant Lance Tobias